09-4027.101-RSK                                              February 17, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL T. McRAITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 4027 |
| ) | |
| AMERICAN RE-INSURANCE CO. *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is the plaintiff's objection to removal and motion to remand. For the reasons explained below we deny plaintiff's motion.

## BACKGROUND

Plaintiff Michael T. McRaith, the director of the Illinois Department of Insurance, is the court-appointed "Rehabilitator" of Centaur Insurance Company ("Centaur"). See generally In the Matter of the Rehabilitation of Centaur Ins. Co., No. 87 CH 8615 (Ill. Cir.) (hereinafter, the "Rehabilitation Proceeding."). The current plan of rehabilitation, entered by the Circuit Court of Cook County (the "Supervisory Court") on December 8, 2000, directs McRaith to marshal Centaur's assets "to provide maximum distribution or distributions to the policyholders and creditors of Centaur." (See Centaur Ins. Co. Second Rev. Plan of Rehab., attached as Ex. 1 to Obj. to Removal, § 2.02.) McRaith is authorized, in turn, to

"bring any action" against "any other person with respect to that person's dealings with" Centaur. <u>See</u> Ill. Ins. Code, 215 ILCS 5/192. Pursuant to that authority McRaith filed this lawsuit in the Circuit Court against defendants American Re-Insurance Company (n/k/a Munich Reinsurance America, Inc.) and INA Reinsurance Company (f/k/a Ace American Insurance Company, n/k/a R&Q Reinsurance Company), claiming that they are contractually obligated to pay a portion of a settlement entered into between McRaith and one of Centaur's insureds.

The parties' dispute arises from two insurance policies issued by Centaur to J.T. Thorpe Company ("Thorpe"), which was in the business of selling, installing, and removing asbestos insulation. (Compl. ¶¶ 9, 13.) Thorpe, which has been named in over 80,000 claims arising from that business, has since filed for bankruptcy. (<u>Id.</u> at ¶¶ 13-14.) Thorpe filed a proof of claim in the Rehabilitation Proceeding seeking $45 million, the limits of its policies with Centaur. (<u>Id.</u> at ¶ 16; <u>see also</u> Decision re Thorpe Claim, attached as Ex. D to Aff. of Arthur F. Brandt (hereinafter, "Brandt Aff."), at 1.) McRaith moved to disallow Thorpe's claim in its entirety, arguing (among other things) that Thorpe had not adequately documented its claim. (<u>See</u> Decision re Thorpe Claim at 2.) The Supervisory Court denied McRaith's motion in an opinion dated November 18, 2004. (<u>Id.</u> at 13.) Thereafter Thorpe and McRaith negotiated to settle their coverage dispute. (Compl. ¶

18.) On July 7, 2006 McRaith's representative notified the defendants that the parties had settled Thorpe's claim for $31,950,000, subject to the Supervisory's Court's approval. (See Letters dated July 7, 2006, attached as Exs. F & G to Brandt Aff.).) The notices stated that the settlement was "immediately billable" to the defendants pursuant to the reinsurance certificates issued by the defendants to Centaur. (Id.) The defendants filed objections to the proposed settlement in the Circuit Court while "reserv[ing]" their rights and defenses under the reinsurance certificates. (See Defs.' Objs., attached as Exs. I & J to Brandt Aff.) The Supervisory Court approved the settlement, concluding that it was "fair, reasonable and adequate based on the complexity, expense and likely duration of the litigation." (See Opinion dated June 12, 2007, attached as Ex. K to Brandt Aff.) At the same time it rejected McRaith's attempts to bind the reinsurers to pay a portion of the settlement. (Id. at 4 ("The objecting reinsurers, whose policies are not the subject of the Petition, are not parties to this cause, though they were given notice of the proceeding and allowed to file objections.").) The court's order approving the settlement is even more explicit: "nothing in this ORDER shall impact, limit, or prejudice any rights, remedies and/or defenses the Reinsurers may have under the law or pursuant to their reinsurance contracts, all of which are fully preserved for any future arbitration or litigation relating

to reinsurance issues." (See Order Regarding Claim of JT Thorpe, dated June 12, 2007, attached as Ex. B. to Brandt Aff.) That "future litigation" is now upon us.

## DISCUSSION

In his complaint in this case McRaith requests a declaration under the Illinois Declaratory Judgment Act that the defendants are obligated to pay a portion of the Thorpe settlement pursuant to the parties' reinsurance treaties. (Compl. at Counts I (as to American Re-Insurance) & III (as to R&Q Reinsurance).) He also requests damages for breach of contract against each of the defendants based upon the same allegations. (Compl. at Counts II (as to American Re-Insurance) & IV (as to R&Q Reinsurance).) The defendants removed this action pursuant 28 U.S.C. §§ 1332 and 1441, and McRaith now moves to remand the case back to state court on two grounds: (1) McCarran-Ferguson "reverse-preemption," and (2) abstention under Burford v. Sun Oil Co., 319 U.S. 315 (1943).

**A. McCarran-Ferguson Act**

McRaith argues that under the McCarran-Ferguson Act Illinois's Insurance Code preempts the federal diversity-jurisdiction statute and requires us to remand this case to the Circuit Court. The relevant provision of the McCarran-Ferguson Act provides that,

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . .

15 U.S.C. § 1012(b). We apply a three-part test to determine whether, under McCarran-Ferguson, federal law is "reverse preempted" by state insurance law: (1) "does the federal statute at issue 'specifically relate to the business of insurance;'" (2) "was the state statute 'enacted . . . for the purpose of regulating the business of insurance;'" and (3) "would application of the federal statute 'invalidate, impair or supersede' the state law." Autry v. Northwest Premium Serv., Inc., 144 F.3d 1037, 1040-41 (7th Cir. 1998) (quoting United States Dept. of the Treasury v. Fabe, 508 U.S. 491, 501 (1993)) (internal quotation marks omitted). The answer to the first inquiry is clearly "no." Turning the second inquiry, "a statute is 'enacted . . . for the purpose of regulating insurance' if it possesses the end, intention, or aim of adjusting, managing, or controlling the relationship between the insurance company and the policyholder, directly or indirectly." Id. at 1044. In Autry our Court of Appeals held that a state law regulating premium finance agreements did not satisfy this definition: "[t]he statute may serve to protect someone who happens to be an 'insured,' but it does not protect that person in his capacity as a party to a contract of insurance. The fact that the money borrowed ultimately pays insurance premiums is incidental." Id. McRaith relies on Boozell v. United States, 979 F.Supp. 670, 678 (N.D. Ill. 1997), a pre-Autry decision which held that the Illinois statute governing the priority of claims to an insolvent

insurer's estate was enacted for the purpose of regulating the business of insurance. By contrast, the court in Shapo v. Engle, No. 98 C 7909, 1999 WL 1045086, *11-12 (N.D. Ill. Nov. 2, 1999) reached the opposite conclusion in a case involving an Illinois statute regulating the liquidator's right to recover distributions from the insolvent insurer's affiliates. Although the statute might benefit an insured by recovering assets for the insurer's estate, "it does not protect that person in his capacity as a party to a contract of insurance." Id. at *11 (quoting Autry, 144 F.3d at 1044)(internal quotation marks omitted). Shapo is closer to our facts than Boozell and we find its interpretation of Autry persuasive. We conclude that § 5/192 was not enacted for the purpose of regulating the business of insurance.[1]

Even if we were to conclude otherwise, we are not persuaded that the federal diversity and removal statutes invalidate, impair, or supercede Illinois state law. Article XIII of the Insurance Code does not purport to confer on state courts exclusive jurisdiction to hear claims filed by the rehabilitator against third parties, even assuming that such a provision would defeat

---

[1] McRaith generally cites the "sections of Article XIII regarding the rehabilitation of Centaur" as the relevant state law for McCarran-Ferguson's purposes. (Obj. to Removal at 6-7.) Our Court of Appeals specifically rejected this approach in Autry. See Autry, 144 F.3d at 1043 n.4 (focusing on the specific provision of the Illinois Code dealing with premium finance agreements, and rejecting the defendants' attempts to rely on other, related provisions). Section 5/192 gives McRaith standing to pursue this lawsuit, which is otherwise governed by state contract law. It is that provision, then, which must have been "enacted for the purpose of regulating the business of insurance" according to the standard announced by the Court in Autry.

federal diversity jurisdiction. Cf. Gross v. Weingarten, 217 F.3d 208, 221 (4th Cir. 2000) ("The Supreme Court has repeatedly and unequivocally rejected the deputy receiver's contention that a state may oust the federal courts of jurisdiction by creating an exclusive forum for claims against an estate.") (citing cases).[2] Accordingly, our concurrent jurisdiction does not "supercede" or "invalidate" state law. See Humana, Inc. v. Forsyth, 525 U.S. 299, 307-08 (1999)(defining "supercede" and "invalidate" to mean "render ineffective," with or without a substitute rule). Nor are we persuaded that it would "impair" Illinois's rehabilitation scheme. "[W]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." Id. at 310. McRaith argues that Illinois law provides a "comprehensive" scheme of rehabilitation and liquidation, which is an accurate generalization. But he has not persuaded us that federal jurisdiction in this case interferes with that scheme. The proceeds of any judgment that McRaith obtains in federal court will be distributed to policyholders and other

---

[2] McRaith muddies the waters by insisting that as rehabilitator he owns title to the reinsurance certificates and that the Circuit Court was the first court to assume jurisdiction over that property. (Obj. to Removal at 13); see, e.g., Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466 (1939) ("[T]he court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other."). That rule does not apply to *in personam* proceedings, id. at 465-66, and a lawsuit for breach of contract is "a quintessential *in personam* proceeding." Burr & Forman v. Blair, 470 F.3d 1019, 1032 (11th Cir. 2006).

creditors in the rehabilitation proceeding according to their relative priority as determined by state law. See Gross, 217 F.3d at 222 (McCarran-Ferguson did not preempt federal litigation where the state court retained ultimate control over the disposition of the insolvent insurer's estate); see also Grimes v. Crown Life Ins. Co., 857 F.2d 699, 702 (10th Cir. 1988) ("[T]he policy of the McCarran-Ferguson Act was to leave the regulation of insurers to the states, it did not intend to divest federal courts of the right to apply state law regarding the regulation of insurers in appropriate diversity proceedings."); cf. AmSouth Bank v. Dale, 386 F.3d 763, 783 (6th Cir. 2004) (citing Gross and Grimes and concluding that state law governing the liquidation of insolvent insurers did not reverse-preempt the Declaratory Judgment Act).[3] In sum, we conclude that state law does not reverse preempt the federal diversity and removal statutes in this case.

B. **Burford Abstention**

---

[3] Some of the district court cases that McRaith relies on take a broader view of McCarran-Ferguson preemption than we think is consistent with Autry and Humana. See Kessner v. One Beacon Ins. Co., No. 4:09CV3003, 2009 WL 1408973, *3-4 (D. Neb. May 18, 2009); Corcoran v. Universal Ins. Corp., 713 F.Supp. 77, 81 (S.D.N.Y. 1989). In other cases the liquidator's cause of action was created by the liquidation statute itself. See In re Amwest Surety Ins. Co., 245 F.Supp.2d 1038 (D. Neb. 2002) (removal statute reverse preempted in action by liquidator to invalidate preferential transfers). Here, McRaith is stepping into Centaur's shoes and asserting a contract claim that Centaur could have asserted on its own behalf but for the rehabilitation. See Florida Dept. of Financial Services v. Midwest Merger Management, LLC, No. 4:07cv207-SPM/WCS, 2008 WL 3259045, *4 n.3 (N.D. Fla. Aug. 6, 2008)(distinguishing Amwest, among other authorities: "this case does not involve recovery from a preferential transfer, which claim arises under insurance liquidation laws and for which the receivership court has exclusive jurisdiction.").

In the alternative, McRaith argues that we should abstain from exercising jurisdiction pursuant to the policy articulated by the Supreme Court in Burford. Burford abstention is appropriate in two circumstances:

> First, we should abstain from deciding difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the present case. Second, we should abstain from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

Hartford Casualty Ins. Co. v. Borg-Warner Corp., 913 F.2d 419, 425 (7th Cir. 1990). This case does not involve a difficult and far-reaching question of state law, so only the second circumstance is relevant. Our Court of Appeals noted in Hartford, a case which also arose out of Centaur's rehabilitation, that "there are a large number of cases where federal courts have abstained lest they upset ongoing state insurance insolvency proceedings." Id. at 426.[4] At the same time, we must bear in mind that "abstention is the exception and not the norm." Id. at 425. "[T]he power to dismiss recognized in Burford represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996) (citation and internal quotation marks omitted). In addition, claims for damages and discretionary relief

---

[4] For example, the court in Grimes — cited earlier in this opinion — abstained under Burford after concluding that the McCarran-Ferguson Act did not preempt federal jurisdiction. See Grimes, 857 F.2d at 706.

are treated differently: only the latter may be dismissed or remanded under Burford. Id. at 730-31. McRaith's breach-of-contract claims may only be stayed. Id. McRaith acknowledges Quackenbush, (Reply at 13), but incorrectly assumes that we can circumvent its holding and remand the entire action to the state court in the interests of judicial economy. Cf. Superior Beverage Co., Inc. v. Schieffelin & Co., 448 F.3d 910, 914 (6th Cir. 2006) ("[T]he claim was for both equitable and money damages and, therefore, the district court's order dismissing and remanding the instant action constituted an 'abnegation of judicial duty.'") (quoting Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 29 (1959)). Given our obligation to retain the breach-of-contract claims, judicial economy supports the opposite result.[5] Indeed, remanding even a portion of the case is an option only because McRaith elected to add what appear to be redundant declaratory-judgment counts to a straightforward breach-of-contract complaint. The court in Koken v. Cologne Reinsurance (Barbados), Ltd., 34 F.Supp.2d 240, 249 (M.D. Pa. 1999), faced with a similar situation, refused to abstain: "[s]ince the case is really a damages action, we refuse to exercise our discretion to abstain when the requests

---

[5] In a recent case involving a different abstention doctrine our Court of Appeals concluded that the judiciary's interest in avoiding piecemeal litigation supported retaining jurisdiction over an entire action if the court was required to adjudicate a portion of the lawsuit. See R.R. Street & Co., Inc. v. Vulcan Materials Co., 569 F.3d 711, 714-717 (7th Cir. 2009) (applying Wilton/Brillhart abstention, pursuant to which district courts have "considerable leeway in deciding whether to entertain declaratory judgment actions even though subject matter jurisdiction is established."). R.R. Street is not controlling, as McRaith points out, but it is instructive.

for declaratory relief were probably included simply to set the table for an abstention motion under Burford."

Even setting aside these concerns, we are not persuaded that Burford abstention is appropriate. In Hartford our Court of Appeals articulated a non-exclusive list of factors to help determine "whether a federal court should exercise its jurisdiction within the context of the insurance industry:"

> First, is the suit based on a cause of action that is exclusively federal? Second, does the suit require the court to determine issues that are directly relevant to state policy in the regulation of the insurance industry? Third, do state procedures indicate a desire to create special state forums to regulate and adjudicate these issues? Fourth, are difficult or unusual state laws at issue?

Hartford, 913 F.2d at 425. This case does not involve an exclusively federal cause of action, which tends to favor abstention. Id. at 426 ("It is the states that have the paramount interest in an uniform insurance rehabilitation process."); see also Izzo v. Borough of River Edge, 843 F.2d 765, 769 (3d Cir. 1988) ("If only state law applies, Burford abstention carries more weight than when federal interests require evaluation as well."). On the other hand, the issues in this case are not "directly relevant to state policy in the regulation of the insurance industry." This is an ordinary breach of contract action that happens to involve an insurer in rehabilitation. See Grode v. Mutual Fire, Marine and Inland Ins. Co., 8 F.3d 953, 960 (3d Cir. 1993) ("Simple contract and tort actions that happen to involve an

insolvent insurance company are not matters of important state regulatory concern or complex state interests."). We also note in this connection that the issues raised in this lawsuit are not "difficult or unusual." Federal courts are routinely called upon to apply state law to interpret insurance policies and to adjudicate insurance coverage disputes. See, e.g., Medical Protective Co. v. Kim, 507 F.3d 1076 (7th Cir. 2007).

Illinois has created a special state forum for insurer rehabilitation and liquidation, but abstention is not required simply because such a forum exists. See New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 362 (1989) ("While Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy.") (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 816 (1976)).[6] In cases like Hartford where the insolvent insurer or its representative is the defendant the potential to disrupt the

---

[6] Neither side makes much of the fact that the case was not assigned to the judge presiding over the Rehabilitation Proceeding — McRaith's motion to consolidate the two cases was pending when the defendants removed the case to this court. (Obj. to Removal at 5.) McRaith seems to assume that the motion would have been granted, and at various points in his briefs he argues as though it already had been. (See, e.g., Reply at 8 (arguing that the defendants removed this case "from" the Rehabilitation Proceeding).)) It is debatable, at least, whether the cases would have been consolidated over the defendants' objections. Cf. Stamp v. Insurance Co. of North America, 908 F.2d 1375, 1379 (7th Cir. 1990) ("All parties agree, moreover, that the liquidation court in Illinois lacks the ancillary jurisdiction that a federal bankruptcy court possesses, so that the liquidation court does not offer a forum in which all questions concerning Reserve may be settled."). However, defendants have not pursued this argument.

rehabilitation proceeding is clear.  See Hartford, 913 F.2d at 426 (Observing that the plaintiff was "attempting to jump ahead of Centaur's other creditors by filing a lawsuit outside the state rehabilitation proceedings.").[7]  It is less clear in cases where, as here, the insurer (or its representative) is suing a third party.  The defendants in this case are not seeking a leg up on other creditors in the rehabilitation proceeding.  See, e.g., Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1507 (8th Cir. 1992) (distinguishing Hartford on that ground).

Some federal courts have abstained in similar circumstances, others have not.  Compare Grode, 8 F.3d at 959 (declining to abstain in an action by Pennsylvania's insurance commissioner against foreign reinsurers) with Corcoran v. Andra Ins. Co., Ltd., 842 F.2d 31, 37 (2d Cir. 1988) (abstaining in similar circumstances).  The Corcoran court reasoned that abstention was appropriate because lawsuits by the liquidator against third parties affected "the degree to which the insolvent insurer's estate will have assets sufficient to satisfy the claims of its creditors."  Corcoran, 842 F.2d at 37.[8]  The court in Grode, by

---

[7] See also Grode, 8 F.3d at 960 ("[C]ourts abstain in suits against insolvent insurance companies for the same reasons that district courts refer bankruptcy cases to the bankruptcy courts: Insurance companies tend to issue identical policies to a large number of people, rendering a single forum necessary to dispose equitably of the company's limited assets so as to avoid a race to the courthouse."); Lac D'Amiante du Quebec, Ltee v. American Home Assurance, Co., 986 F.2d 1033, 1045 (3d Cir. 1988) ("[A]ssumption of jurisdiction by the federal court in a suit against an insolvent insurer in liquidation proceedings would be highly disruptive of the state's regulatory scheme.").

[8] The Corcoran court also relied on the fact that the liquidator's authority — whether it merely stood in the insolvent insurer's shoes or had greater rights — was unsettled under New York law.  Corcoran, 842 F.2d at 33, 37.

contrast, focused more narrowly on the relationship between the state's liquidation scheme and the particular dispute in that case. It concluded that Pennsylvania's "complex regulations relating to insolvent insurance companies" were not implicated by a "simple contract action" against foreign reinsurers. Grode, 8 F.3d at 955, 959.[9] We could say much the same in this case. Accepting the premise that the rehabilitator has the right to bring this lawsuit — a fact that no one disputes — Illinois's scheme to rehabilitate insolvent insurers does not affect the rights of the parties now before this court, which derive instead from the reinsurance treaties. The outcome of the lawsuit will affect Centaur's creditors, but one could say that about any lawsuit involving an insolvent insurer. See, e.g., Sevigny v. Employers Ins. of Wausau, 411 F.3d 24, 29 (1st Cir. 2005) (financial impact on policyholders does not warrant abstention absent some "actual disruptive effect on the liquidation"). We think that Grode's reasoning is more consistent with the Supreme Court's emphasis that Burford abstention is an "extraordinary and narrow" exception to our jurisdictional duty.[10]

---

McRaith has not cited any comparable issue with respect Illinois's rehabilitation statute.

[9]/ The court also took into consideration the presence of a federal claim, although it was not a dispositive factor in its decision. Grode, 8 F.3d at 960; cf. Mehan, 965 F.2d at 1504 (declining to abstain even though the lawsuit did not implicate federal law).

[10]/ See Mehan, 965 F.2d at 1507 (distinguishing Grimes and the Second Circuit authority that it relied on (including Corcoran) on the ground that those cases took a broad of view of abstention inconsistent with the Supreme Court's later pronouncements).

McRaith points out that the Circuit Court has already decided issues that may be relevant to this litigation. But "our concern in this case is the disruption of ongoing proceedings in another jurisdiction," Hartford, 913 F.2d at 427, not with the prospect of inconsistent rulings *per se*. Cf. id. at 426 (noting that the probability of inconsistent rulings might allow the plaintiff to receive more than it was entitled to in the rehabilitation proceeding). Unlike Hartford, the outcome of this case is not integrally related to the outcome of the state proceedings. See Hartford, 913 F.2d at 426 (noting that the amount of the plaintiff's recovery in the federal litigation was inextricably tied to the amount of its claim in the rehabilitation proceeding). In approving the Thorpe settlement the Supervisory Court made it abundantly clear that its ruling did not affect any defenses the reinsurers might raise in subsequent litigation. Cf. id. (noting that both the federal and state courts would be required to interpret the plaintiff's reinsurance treaties).[11] The court's other rulings, including those with respect to Centaur's obligations under its policies with Thorpe, will receive whatever preclusive effect they might be entitled to under the law. If those rulings are not entitled to preclusive effect, as appears likely since the defendants are not parties to the Rehabilitation Proceeding, then the defendants are entitled to their day in court.

---

[11]/ McRaith points out that he would need the Supervisory Court's approval to settle this case as well, but does not explain why his settlement authority (or lack thereof) supports abstention.

We do not believe that the "potential for conflict" warrants abstention in this case.

## **CONCLUSION**

Plaintiff's motion to remand (11) is denied.  The parties should immediately commence preliminary discovery if they have not already done so.  A status hearing is set for March 24, 2010 at 11:00 a.m.

DATE:     February 17, 2010

ENTER:    _____
          John F. Grady, United States District Judge